UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERMAINE AMELIA THOMAS                          CIVIL ACTION

VERSUS                                          NUMBER: 11-02290

MICHAEL J. ASTRUE,                              SECTION: "C"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## **REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 16, 18).

Germaine Amelia Thomas, plaintiff herein, filed the subject application for SSI benefits on March 30, 2009, alleging disability as of June 15, 1998. (Tr. pp. 99-101). In a Disability Report that appears in the record, the conditions resulting in plaintiff's inability to work were identified as asthma, high blood pressure, and heart problems. (Tr. pp. 120-127). Plaintiff's application for

SSI benefits was denied at the initial level of the Commissioner's administrative review process on July 24, 2009. (Tr. pp. 52-55). Pursuant to plaintiff's request, a hearing <u>de</u> <u>novo</u> before an Administrative Law Judge ("ALJ") went forward on February 3, 2010 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 56-58, 30-49). On April 22, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 16-29). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-4). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, plaintiff alleges that the ALJ failed to properly consider her obesity, back and leg pain, the combination of her severe impairments, and the side-effects of medication in determining her ability to work. Plaintiff also argues that the exertional demands of certain of the jobs that were identified by the VE at the administrative hearing conflicted with the demands of those jobs as set forth in the Dictionary of Occupational Titles ("DOT"). (Rec. doc. 16-2, pp. 1-3). Relevant to the resolution of those issues are the following

findings that were made by the ALJ:

1. [t]he claimant has not engaged in substantial gainful activity since March 17, 2009, the application date (20 CFR 416.971 et seq.).

2. [t]he claimant has the following severe impairments: asthma, high blood pressure and heart problems (20 CFR 416.920(c)).

3. [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows: avoid ladders and concentrated exposure to extremes of hot and cold temperatures.

5. [t]he claimant has no past relevant work (20 CFR 416.965).

6. [t]he claimant was born on July 25, 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. [t]he claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. [t]ransferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. [c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. [t]he claimant has not been under a disability, as defined in the Social Security Act, since March 17, 2009, the date the application was filed (20 CFR 416.920(g)).

(Tr. pp. 21-22, 25, 26).

Judicial review of the Commissioner's decision to deny SSI benefits is limited to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving

4

that she is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

    1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

    2. an individual who does not have a "severe impairment" will not be found to be disabled.

    3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

    4. if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

    5. if an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. Fraga, 810 F.2d at 1304 (citing Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

Before turning to the specific challenges to the Commissioner's decision that are raised by plaintiff, the Court pauses to recall the standards and the burdens imposed in the summary judgment context. "Summary judgment is appropriate if the record discloses 'that there is no genuine issue of material fact and that the moving part is entitled to a judgment as a matter of law.'" Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993)(quoting Rule 56(c), Fed.R.Civ.P.). "A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it

believes demonstrate the absence of a genuine issue of material fact." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986)). Rule 56 does not, however, impose upon a district court a duty to sift through the record in search of evidence supporting a party's summary judgment position. Ragas Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) See also Rule 56(c)(3) ("court need consider only the cited material").

Unfortunately, plaintiff's cross-motion for summary judgment does not measure up to the foregoing standards. The motion contains no caselaw or citations to the administrative record upon which her challenges to the Commissioner's decision are based. Accordingly, the Court will cite the administrative record only as is necessary to demonstrate that the Commissioner's decision is indeed supported by substantial evidence.

Plaintiff's first challenge to the Commissioner's decision is that the ALJ failed to properly consider the effects of her obesity, back and leg pain, the combination of her impairments, and medication side-effects in determining her ability to work. A fair reading of the ALJ's decision does not bear this out.

A review of the ALJ's written decision of April 22, 2010 reveals that he repeatedly and properly recognized his obligation to consider the evidence related to plaintiff's various impairments in determining whether they singly or in combination were "severe",

whether they satisfied Listing-level severity, and how they affected plaintiff's residual functional capacity. (Tr. pp. 19-21). Having done so, the ALJ found at the second step of the sequential analysis that plaintiff suffered from severe impairments in the form of asthma, high blood pressure, and heart problems. (Tr. p. 21). However, those impairments, whether considered singly or in combination, did not satisfy the criteria of any of those set forth in the Listing of Impairments, particularly Listing 3.03 relative to asthma and Listings 4.02 and 4.04 respectively relative to chronic heart failure and ischemic heart disease. (<u>Id</u>.). Obesity, while no longer a stand-alone impairment set forth in the Listing of Impairments, can reduce an individual's occupational base for work activity in combination with other conditions. <u>Weary v. Astrue</u>, 288 Fed.Appx. 961, 966 n.2 (5th Cir. 2008); <u>Beck v. Barnhart</u>, 205 Fed.Appx. 207, 211-12 (5th Cir. 2006). Social Security Ruling ("SSR") 02-1p instructs that an individual meets the requirements of a listing if she has another impairment that, by itself, meets the requirements of a listing which "... is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p, 2000 WL 628049 at *4-5. By specifically considering plaintiff's asthma and heart conditions, the ALJ thus adequately complied with the mandate of SSR 02-1p.

Having found that plaintiff's conditions did not satisfy the

criteria of any of those set forth in the Listing of Impairments, the Regulations mandated that the ALJ make an assessment of plaintiff's residual functional capacity. 20 C.F.R. §§416.920(e), 416.945. Prior to making this assessment, the ALJ opined as follows:

> [t]he claimant testified that she is 5'5" tall and 285 pounds. Thus, she is obese. The combined effects of obesity with impairments can be greater than the effects of each of the impairments considered separately. The residual functional capacity assessment below takes the combined effects into consideration for this claimant. (SSR 02-1p).

(Tr. p. 21).

Thus, just as in <u>Beck</u>, despite plaintiff's failure to specifically allege obesity as a disabling condition in her application for SSI benefits and related paperwork, the ALJ independently recognized that obesity should be considered in conjunction with plaintiff's other impairments. <u>Beck</u>, 205 Fed.Appx. at 211-12. <u>See</u> <u>also</u> 20 C.F.R., Pt. 404, Subpt. P, App. 1, Section 1.00(Q). The ALJ then proceeded to make his RFC assessment, recognizing that plaintiff's subjective complaints must be supported by objective evidence. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990); <u>Harper v. Sullivan</u>, 887 F.2d 92, 96 (5th Cir. 1989); <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1010 (5th Cir. 1987). In doing so, the ALJ acknowledged plaintiff's hearing testimony that she suffered from pain in the lower back and in the knees

9

which limited her ability to walk and that she took medication which made her drowsy. (Tr. p. 22). Measured against that testimony was the objective medical evidence that the ALJ then summarized. (Tr. pp. 22-25). That evidence included complaints of lower back and leg pain on August 15, 2008 but plaintiff had no calf tenderness and strength was 5/5 throughout. (Tr. pp. 189-190). Leg pain persisted on September 12, 2008 but muscle strength in the lower extremities remained at 5/5 and no edema was present. (Tr. pp. 187-188). Plaintiff's weight was thought to be the most contributing cause to this issue. Id.

The ALJ additionally took notice of plaintiff's cardiac catheterization on January 9, 2009 which demonstrated 30-40% stenosis in the left femoral artery but no flow-limiting stenosis in the right. (Tr. pp. 195-196). Only minimal edema was noted at a follow-up visit on January 23, 2009. (Tr. pp. 185-186). Plaintiff did have a one-day hospital admission in April of 2009 following complaints of chest pain radiating to the left arm that was relieved with nitroglycerin. (Tr. pp. 180-182). Plaintiff underwent a battery of tests during this inpatient stay which her physician later indicated was unclear as to whether she had suffered a cerebrovascular accident ("CVA") or a transient ischemic attack ("TIA"). Plaintiff was still an active smoker at this time and her history of morbid obesity was duly noted but an examination

of the lower extremities revealed only trace bilateral pretibial edema. (Tr. pp. 245-246). Pulmonary function studies performed on July 8, 2009 showed severe restriction pre-medication but significant improvement post-medication. (Tr. pp. 291-295). Plaintiff had a slightly elevated glucose level, a low TSH value, and a normal rheumatoid factor when laboratory studies were done on December 30, 2009. (Tr. pp. 381, 383, 384).

After considering the foregoing and other objective medical evidence, the ALJ remarked as follows:

> [t]he overall record does not support the claimant's alleged severity of her alleged conditions. It is questionable whether or not she had a CVA or TIA in April 2009. While she testifies she is symptomatic for chest pain and shortness of breath on exertion, she gets relief with Nitroglycerin. Also, her asthma symptoms are improved with Advair and inhalers, as needed. She has headaches, but [an] MRI of the brain is normal. She has some lower extremity weakness and edema, but does not use a cane or any other assistance device to ambulate. She is obese which further impacts her condition. She testified she recently stopped smoking, which reduces her risk for COPD. While she has significant conditions, they are not disabling. No treating or examining source has deemed the claimant precluded from work activities or even listed significant functional limitations. However, granting her the benefit of some doubt, it is determined that she has the residual functional capacity described herein.
>
> (Tr. p. 24).

11

As noted by the ALJ, none of the physicians who had treated or examined plaintiff had declared that she was precluded from performing work activities or imposed any significant functional limitations on her, a proper consideration in determining an individual's disability status. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995); Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995). The ALJ also noted that on July 23, 2009, an Administration physician had reviewed plaintiff's file and determined that she was capable of light level work, a determination that the ALJ was bound to consider. (Tr. pp. 296-303). 20 C.F.R. §416.927(f)(2)(i). In further recognition of plaintiff's obesity and the combined effect of her other impairments, the ALJ reduced the available pool of light-level jobs by excluding those involving the use of a ladder and those that are performed in concentrated exposure to heat and cold.

Plaintiff cites to no medical evidence establishing that her obesity caused any specific work-related limitations that were not accounted for by the ALJ. She also cites to no objective evidence of record which documents any work-related restrictions due to back and leg pain or medication side-effects, absent which the Court is unable to say that the Commissioner's decision was not supported by substantial evidence.

Plaintiff's second challenge to the Commissioner's decision is

that the exertional demands of certain of the jobs that were identified by the VE at the administrative hearing that plaintiff was believed to be capable of performing conflicted with the demands of those jobs as set forth in the DOT.

At the administrative hearing that was held on February 3, 2010, the ALJ presented the VE with a hypothetical question that assumed an individual of plaintiff's age and education who was capable of light-level work but who was to avoid the use of a ladder and concentrated exposure to extreme heat and cold. In answer to that question, the VE identified the jobs of dishwasher, janitor/building cleaner, and maid/housekeeping cleaner that the individual described in the hypothetical was capable of performing. When asked whether there was any conflict between the DOT and the descriptions of the jobs that she had just identified, the VE testified in the negative. (Tr. pp. 44-45).

Upon being tendered to plaintiff's counsel for follow-up questioning, the VE was first asked whether the dishwashing job was typically performed in high temperatures. To the hypothetical question as initially framed by the ALJ the VE was then asked whether the identified jobs could be performed if the individual experienced shortness of breath after walking one block and suffered from migraine headaches that required medication and lying down one hour from relief. Counsel queried the VE further on the

effect of moderate drowsiness due to medication side-effects and an inability to be on one's feet for six hours per eight-hour workday. However, at no time was the VE specifically asked whether the jobs that she had identified were truly of a light exertional nature. (Tr. pp. 45-47). In his closing remarks to the ALJ, counsel argued, <u>inter alia</u>, that plaintiff suffered from a non-exertional impairment in the form of pain that would make application of the Medical-Vocational Guidelines of the Regulations (i.e., the "Grids") inappropriate. (Tr. p. 48). Citing sections 318.687-010, 382.664-010, and 381.687-014 of the DOT, plaintiff now argues that the ALJ's reliance on the VE's testimony was misplaced because the DOT provides that the jobs of dishwasher and janitor/building cleaner are performed at the medium and heavy exertional levels.

Social Security Ruling 00-4p provides that an ALJ should identify and obtain an explanation for any conflicts between a VE's testimony and the DOT and to explain in his or her decision how any identified conflicts were resolved. <u>Barratt v. Astrue</u>, 2008 WL 2325636 at *1 n. 1 (5th Cir. 2008). "When the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ <u>may</u> rely exclusively on the [Medical-Vocational] Guidelines in determining whether there is other work available that the claimant can perform." <u>Selders</u>, 914 F.2d at 618 (emphasis added).

"Otherwise, the ALJ must rely upon vocational testimony or other similar evidence to establish that such jobs exist." Fraga, 810 F.2d at 1304 (citing Lawler, 761 F.2d at 198)(emphasis added). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1985). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." Id.

Recognizing that the DOT is not comprehensive, because it cannot and does not purport to include each and every specific skill and qualification for a particular job, the Fifth Circuit in Fields even went so far as to conclude that the DOT is not "similar evidence" that would satisfy the Commissioner's burden of proof at the fifth step of the sequential analysis. Fields, 805 F.2d at 1170-71. "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000). An ALJ may rely upon the testimony of a vocational expert provided that the record reflects an adequate basis for doing so. Id. at 146. "Moreover, claimants should not be

permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." Id. at 146-47.

In the matter at hand, just as in Carey, the ALJ found that plaintiff additionally suffered from non-exertional impairments in the form of needing to avoid the use of ladders and concentrated exposure to extremes of heat and cold. That being the case, the ALJ was required to utilize the services of a VE to establish that there was other work available that plaintiff could perform. And, just like Carey, plaintiff's counsel was given an opportunity to cross-examine the VE about any conflicts between the requirements of the jobs she identified at the hearing and the descriptions of those jobs as contained within the DOT, including the exertional demands of the various positions. Carey, 230 F.3d at 146-47. Plaintiff, however, failed to avail herself of that opportunity and should not be heard to complain of that failure here. Id. Moreover, in addition to the positions of dishwasher and janitor/building cleaner that plaintiff was deemed to be capable of performing, the VE also identified the available job of maid/housekeeping cleaner which the DOT defines as being light in

exertional level. DOT 323.687-014, 1991 WL 672783. The VE further testified that 431,391 of such jobs existed in the national economy and that 7,680 of such jobs existed in the local economy which constitutes a "significant number" for purses of sustaining the Commissioner's burden at the fifth step of the §416.920 analysis. Monroe v. Shalala, 55 F.3d 633, 1995 WL 313965 at *8 (5th Cir. 1995)(table); Denais v. Sec. of Health & Human Services, 820 F.Supp. 278, 282-83 (W.D. La. 1993); O.D.W. v. U.S. Comm'r. Soc. Sec. Adm., 2009 WL 5108393 at *2 (W.D. La. Dec. 17, 2009); March v. Comm'r. Soc. Sec. Adm., 2008 WL 5273725 at *4 (W.D. La. Dec. 16, 2008). Plaintiff's second challenge thus provides no basis for disturbing the Commissioner's decision.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass

v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this  26th  day of  November , 2012.

                                          ALMA L. CHASEZ
                                  UNITED STATES MAGISTRATE JUDGE